IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
PRIM ADVISORS, INC.,                                   : CASE NO.  1:08 CV 01894
                                                       :
                                       Plaintiff,      : MEMORANDUM OF OPINION AND
                                                       : ORDER
                         -vs-                          :
                                                       :
                                                       :
STEVEN BUCKMAN, ESQ.                                   :
                                                       :
                                       Defendant.      :
-------------------------------------------------      :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

    Removed from Cuyahoga County Court of Common Pleas on 7 August 2008, this matter alleges that defendant Steven Buckman, Esq. ("Mr. Buckman" or "Defendant") tortiously interfered with the business of plaintiff Prim Advisors Inc. ("Prim" or "Plaintiff")  (Doc. 1).  Specifically, Prim maintains that Attorney Buckman telephoned Prim principal Joseph A. Lombardo ("Mr. Lombardo"), on behalf of his client Anthony Delfre ("Mr. Delfre"), and threatened to report to the Federal Bureau of Investigation ("FBI") and the Internal Revenue Service ("IRS") on the activities of Mr. Lombardo and Prim.  The claim alleges that the impetus for Mr. Buckman's two telephonic contacts with Prim emerged directly from a lawsuit Prim filed against Christian D. Laettner, and

other named defendants.  That suit, appearing before United States District Court Judge John R. Adams as <u>Prim Advisors, Inc. v. Christian D. Laettner, et al.</u>, 1:07 cv 03661, has since been settled.

While Mr. Buckman was not named in that suit, Judge Adams anticipated the instant suit that now appears before this Court.  In his 21 November 2008 Order, Judge Adams permanently enjoined both Prim and Mr. Lombardo from breaching the terms of the settlement agreement detailed in the case before him and directed that, while Prim "may pursue claims against Delfre and Buckman," nevertheless, "those claims may not be premised on <u>any facts</u> related to Laettner and Davis."  (Case 1:07 cv 3661, Doc. 48, pp. 5, 6) (emphasis in the original).

Now before the Court is Mr. Buckman's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Doc.12).  Prim has provided a brief in opposition. (Doc. 14).  For the reasons set forth below the Court will grant Mr. Buckman's Rule 12(c) motion and will dismiss this action on the pleadings.

**Law and Argument**

**Rule 12(c) Standard**

In ruling on a motion for judgment on the pleadings under Rule 12(c), the court considers all factual allegations of the complaint as true. <u>Lindsay v. Yates</u>, 498 F.3d 434, 438,(6th Cir. 2007);  <u>McKamey v. Roach</u>, 55 F.3d 1236, 1237 (6th Cir. 1995); <u>United States v. Moriarty</u>, 8 F.3d 329, 332 (6th Cir. 1993).  Where a rule 12(c) motion raises what is essentially a Rule 12(b)(6) defense by challenging the legal basis of the

complaint, the analytical framework for the motion for judgment on the pleadings mirrors that used under Rule 12(b)(6).

Until recently, the standard for a motion to dismiss for failure to state claim upon which relief can be granted was that the motion establish, beyond a reasonable doubt, that "the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wright v. Metrohealth Med. Ctr., 58 F.3d 1130, 1138 (6th Cir. 1995), cert denied, 516 U.S. 1158 (1996). However, in Bell Atlantic Corp. V. Twombly, 550 U.S. 544 (2007), the United States Supreme Court modified the standard, in particular the "no set of facts" phrase. See, e.g. Weisbarth v. Geauga Park Dist., 499 F.3d 538, 541 (6th Cir. 2007).

The Court in Bell Atlantic characterized Conley's "no set of facts" phrase as "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. The Court understood that Conley merely "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." Id.

The decision in Bell Atlantic noted that "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct." Id. The Court elaborated by noting that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

In ruling on a motion to dismiss, the Court does not weigh the evidence, nor appraise the credibility of witnesses. Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).

3

The Bell Atlantic Court explained that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his [or her] allegations or prove his claim to the satisfaction of the factfinder." Bell Atlantic, 127 S.Ct. at 1969.

### Tortious Interference with the Business of Prim

Parsing Prim's Complaint for tortious interference strictly, against the only named defendant, Mr. Buckman, the Court finds the allegations contained in ¶¶ 4 and 5 of the Complaint involving the two telephone calls purportedly placed by Mr. Buckman to Prim principal Lombardo.[1]  The Complaint further alleges that as part of a larger "chain of events" that included those two telephone calls, Mr. Lombardo took "certain steps to protect himself and to protect Prim."  (Complaint, ¶ 6)

---

[1] In pertinent part, Paragraph 4 of the Complaint alleges the following:

> During the spring of 2007 prior to the time that Prim filed that lawsuit [before Judge Adams], Buckman contact Prim principal, Joseph A. Lombardo . . . and stated that if Prim sued Anthony Delfre . . . or the parties named in that lawsuit, Buckman would turn Prim and Lombardo into the . . . FBI, would turn Prim and Lombardo into the . . . IRS, would state that Prim and Lombardo were part of projects and business ventures operated by the parties named in that lawsuit and supervised by Delfre, and that Prim and Lombardo were aware of how those projects and business ventures were operated and that Prim and Lombardo were opening a can of worms and that Prim and Lombardo would be sorry.

In pertinent part, Paragraph 5 of the Complaint alleges the following:

> After Prim filed that lawsuit [before Judge Adams] Buckman reiterated the threats Buckman had previously made.  Buckman again stated that if Prim persisted in pursuing the [sic] that lawsuit, Buckman would turn Lombardo and Prim into the FBI, IRS and Buckman stated that continuing the [sic] that lawsuit would open a Pandora's Box.

Pursuant to Ohio law, the tort of interference with a business relationship occurs when a person, without privilege to do so, induces or otherwise purposefully causes a third person not to enter into or continue a business relationship with another. Diamond Wine & Spirits v. Dayton Heidelberg Dist. Co., Inc., 774 N.E. 2d 775, ¶ 23 (Ohio App. 2003).  Tortious interference with a business relationship includes interference with prospective contractual relations not yet reduced to a contract.  Knox Mach. v. Doosan Mach., USA, Inc., Warren App., 2002 WL 31155177, (Ohio App. 2002).  The elements of tortious interference with a business relationship are (1) a business relationship, (2) the tortfeasor's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and, (4) damages resulting therefrom. Knox Mach at ¶ 23.

The elements of the tort require the intentional and improper interference with the plaintiff's prospective contractual or business relations by (1) inducing or otherwise causing a third person not to enter into or continue the prospective relation, or (2) preventing the plaintiff from acquiring or continuing the prospective relation.  Dryden v. Cincinnati Bell Tel. Co., 734 N.E. 2d 409, 413-14 (Ohio App. 1999).

Mr. Buckman urges the Court to find, as a matter of law, that Prim fails to allege any independent bases for liability. (Doc. 12). Following the decision in Dryden, the Defendant maintains that Prim does not allege his conduct caused any person not to enter into or continue a business relationship with the Plaintiff, and further, does not claim that Mr. Buckman prevented Prim from acquiring or continuing any relationship.

Mr. Buckman argues, in addition, that even if Prim did adequately plead the basic elements of tortious interference with a business relationship it, nevertheless, failed to

5

allege the Defendant's conduct was improper under the Restatement analysis.  Under Ohio law, whether the interference is improper or privileged depends upon several factors adopted from Section 767 of the Restatement of the Law 2d, Torts.  Among these are (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests interfered with, (4) the interests sought to be advanced by the actor, (5) the societal interests in protecting the freedom of action and the contractual interests of the plaintiff, (6) the proximity or remoteness of the interference, and (7) the relations of the parties.  Dryden v. Cincinnati Bell Tel. Co., 734 N.E. 2d at 14.  Mr. Buckman maintains that, without an allegation of misconduct under the Restatement analysis the Complaint alleges that the Defendant merely called a potential litigant on behalf of his client to try and convince that litigant not to bring suit, an act of routine advocacy.

      Both of Mr. Buckman's arguments are well taken.  On its face, the Complaint does not allege the Defendant's actions caused any person not to enter into or continue a business relationship with Prim.  Nor, on its face does the Complaint allege that Mr. Buckman prevented Prim from acquiring or continuing any relationship.  Further, Prim's Complaint does not enage the elements of the Restatement analysis, upon which Prim must anchor a legal argument that Mr. Buckman's conduct was improper.  As a matter of law, Prim could not address the elements of the Restatement analysis without running afoul of Judge Adams' 21 November 2008 Order.

      In response, Prim relies upon an attenuated legal argument which begins by declaring that "[l]itigation is a form of a business relationship," and that "spoliation or alteration of evidence [ ] constitute[s] a tortious interference with a business relationship." (Doc. 14, p.3).  Relying upon the decision in Drawl v. Cornicelli, 706 N.E.

6

2d 849 (Ohio App. 1997), Prim concludes that "[i]f disruption of litigation through spoliation of evidence is actionable conduct then disruption of litigation by other means should likewise be a viable claim."  Prim's speculative argument is without legal foundation.  Further, Prim's speculative inferences aside, Ohio courts have refused to extend the holding in Drawl to cases where spoliation claims did not involve the destruction or alteration of physical evidence.  See Patriot Logistics, Inc. V. Contex Shipping (NW), Inc., 2007 WL 2708057 (N.D. Ohio 14 September 2007).  There exist no allegations of the destruction of physical evidence in this instance.  As such, the Court finds Prim's argument legally untenable.

**Conclusion**

For the reasons discussed above, the Court will grant Mr. Buckman's Rule 12(c) motion for judgment on the pleadings.  This matter is dismissed in its entirety.

.

IT IS SO ORDERED.

      /s/Lesley Wells  
      UNITED STATES DISTRICT JUDGE